Groesbeck vs. Chicago, Milwaukee & St. Paul R. Co.

GROESBECK, Administratrix, Appellant, vs. CHICAGO, MILWAU-
KEE & ST. PAUL RAILWAY COMPANY, Respondent.

*May 23 — June 19, 1896.*

*Railroads: Killing of traveler at highway crossing: Unlawful speed: Con-
tributory negligence.*

Plaintiff's intestate was killed while attempting to drive over a high-
way crossing, on a damp, foggy evening, by a train running about
sixty miles an hour. He was a careful driver, familiar with the
crossing, and his horse was well broken and easily managed. He
was driving at a moderate speed, and his horse pursued an even
gait clear up to the crossing. At any point within 500 feet from
the crossing he might have seen the headlight of the engine con-
tinuously after it came within three fourths of a mile from the
crossing. No one saw the accident. *Held,* that although a statute
limited the speed of the train when it crossed that highway to
fifteen miles an hour, and the deceased had the right to act upon
the assumption that it would not run at a greater speed, he was
nevertheless guilty of contributory negligence either in failing to
look at all or in deliberately taking the risk of attempting to cross
in front of the train.

APPEAL from a judgment of the circuit court for Walworth
county: FRANK M. FISH, Circuit Judge. *Affirmed.*

On the afternoon of the 23d day of December, 1893, at a
few minutes after 6 o'clock, Garrett J. Groesbeck, accom-
panied by his little son, who was seven years of age, in a
one-horse open buggy, were driving southward upon one
of the principal thoroughfares of Walworth county, called
the "Geneva Road," and while crossing the track of the de-
fendant company nearly at right angles the buggy was
struck by the engine of an express train on the defendant's
road, and both occupants were instantly killed, the horse
being practically uninjured. This action is brought by the
appellant, the widow of the deceased, who has been ap-
pointed administratrix of his estate.

| | |
|---|---|
| 93 | 505 |
| 96 | 288 |
| 96 | 314 |
| 96 | 618 |
| 93 | 505 |
| 99 | 386 |
| 93 | 505 |
| 101 | 152 |
| 101 | 368 |
| 101 | 413 |
| 93 | 505 |
| a106 | 465 |
| 93 | 505 |
| 108 | 357 |
| 93 | 505 |
| 110 | 156 |
| 110 | 345 |
| 93 | 505 |
| 112 | 142 |
| 112 | 163 |
| 112 | ¹164 |
| 56 LRA | 251 |

The road in question, as before stated, crosses the railroad track at nearly a right angle, and runs directly north and south; the railroad running practically east and west, but with a slight variation toward the northwest. The highway was a much-traveled highway, and after running some distance north of the railroad track turns west and enters the village of Elkhorn, which is an incorporated village, the center line of the north and south portion of the highway being the west line of the village. The train in question was a regular express train from the east, and due at the station in the village of Elkhorn, about a mile west of this crossing, about 6 P. M. On the evening in question the train was from five to ten minutes late. At a point about three fourths of a mile east of the crossing where the accident happened, the railroad surmounted the crest of a hill, and from that point until it passed the crossing there was a descending grade of one foot in 100 feet. The highway as it approaches the crossing from the north also slopes toward the railroad track.

The deceased had been in the village of Elkhorn on the afternoon of the day of the accident, and was returning to his home, some distance south and east of this crossing, at the time of the accident. He had been a resident of Walworth county for years, and had lived on the farm which was his home at the time of his death since the preceding 1st day of November, and had ridden over the road in question to Elkhorn a number of times. He was driving a quite well-broken horse, and he was a steady, prudent man, accustomed to driving horses. The evening was foggy and damp, raining a little at times. The evidence showed that the train was running at a very high rate of speed, probably at the rate of sixty miles an hour, in an endeavor to make up lost time. No witnesses saw the accident. The engineer of the engine had his head out of the window on the north side, keeping a lookout, and at or about the instant of

contact caught a glimpse of something, and thought it was a horse, but could not see anything definite. There was testimony as to some obstruction on the north side of the railroad track, consisting of willow trees, which might interfere with the vision of a person crossing the track from the north on this highway. As this testimany will be referred to in the opinion, it is unnecessary to state it here.

At the close of the evidence the defendant moved the court to direct a verdict, which motion was denied by the court. The case was then given to the jury, and after the jury had deliberated for a time the court recalled them and directed a verdict for the defendant, and from judgment upon such verdict the plaintiff appealed.

For the appellant there was a brief by *Quarles, Spence & Quarles,* and oral argument by *J. V. Quarles.* They contended, *inter alia,* that the deceased was justified in assuming that the approaching train was running at a lawful rate of speed, and might act accordingly. Whitaker, Smith, Neg. 419; *Newson v. N. Y. C. R. Co.* 29 N. Y. 383; *Sullivan v. M. P. R. Co.* 117 Mo. 214; *Nutter v. B. & M. R. R.* 60 N. H. 483, 485; *State v. B. & M. R. R.* 58 id. 408, 410; *Lyman v. B. & M. R. R.* 11 L. R. A. 364; *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 489; *Haas v. C. & N. W. R. Co.* 41 id. 44, 50; *Winstanley v. C., M. & St. P. R. Co.* 72 id. 381; *Piper v. C., M. & St. P. R. Co.* 77 id. 254, 255. It is not negligence to act upon the assumption that another will obey a statute. *Louisville & N. R. Co. v. E. T., V. & G. R. Co.* 22 U. S. App. 109; *Jetter v. N. Y. & H. R. Co.* 2 Keyes, 154; *Baker v. Pendergast,* 32 Ohio St. 494; *Ernst v. H. R. R. Co.* 35 N. Y. 28. It is not negligence *per se* for a traveler to attempt to cross in front of a train which he sees approaching. *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 489; *Urbanek v. C., M. & St. P. R. Co.* 47 id. 59; *Eilert v. G. B. & M. R. Co.* 48 id. 606; *Valin v. M. & N. R. Co.* 82 id. 1; *Ferguson v. W. C. R. Co.* 63 id. 145; *Railroad Co. v. Whit-*

*ton's Adm'r,* 13 Wall. 270; *Thoresen v. La Crosse City R. Co.* 87 Wis. 605. If the defendant had observed the statutory rule the deceased would clearly have escaped without injury. His death should, therefore, be attributed to the excessive and unlawful speed. *Detroit & M. R. Co. v. Van Steinburg,* 17 Mich. 119. The inference of negligence depends solely upon the single fact that a collision took place. Many collisions have taken place at open crossings, where the traveler was not at fault. Circumstances may excuse him from looking or listening. *Laverenz v: C., R. I. & P. R. Co.* 56 Iowa, 689; *Barstow v. Berlin,* 34 Wis. 357; *Pennsylvania Co. v. Rudel,* 100 Ill. 603; *Butler v. M. & St. P. R. Co.* 28 Wis. 487; *Hoye v. C. & N. W. R. Co.* 67 id. 15, and cases cited. The law presumes that the deceased was exercising ordinary care, and this presumption is not overthrown by the mere fact of injury. Shearm. & Redf. Neg. § 44; *Hoyt v. Hudson,* 41 Wis. 105, 111; *Gay v. Winter,* 34 Cal. 153; *Smith v. C., M. & St. P. R. Co.* 4 S. Dak. 71; *Phillips v. M. & N. R. Co.* 77 Wis. 352. It was the peculiar province of the jury to consider the circumstances attending this accident and determine what inference should be drawn therefrom. *Thoresen v. La Crosse City R. Co.* 87 Wis. 605; *Langhoff v. M. & P. du C. R. Co.* 19 id. 496; *Hoye v. C. & N. W. R. Co.* 67 id. 15; *Piper v. C., M. & St. P. R. Co.* 77 id. 256.

For the respondent there was a brief signed by *C. H. Van Alstine* and *D. B. Barnes,* attorneys, and *George R. Peck* and *Burton Hanson,* of counsel, and oral argument by *Mr. Hanson.*

WINSLOW, J. It will be seen from the foregoing statement that the present case is quite similar in its facts to the case of *Haetsch v. C. & N. W. R. Co.* 87 Wis. 304. In both cases there was sufficient evidence to establish negligence on the part of the defendant. In both cases the deceased was seated

in a wagon, approaching a railroad crossing with which he was familiar, in the night, a few minutes after a train was due, and was run down by an engine bearing a burning headlight which could be seen by the deceased at some distance from the crossing, had he looked; and in both cases no one lived to tell the tale or explain how the wagon came to be on the track at that moment. It is claimed, however, that there are radical differences between the two cases which call for the application of a different rule in the present case from that applied in the *Haetsch Case*. The material differences claimed to exist between the *Haetsch Case* and the case at bar may be stated as follows: (1) The accident in that case occurred at a place where there was no restriction on the speed of trains, whereas in the present case the speed of the train was restricted by law to fifteen miles an hour after it crossed the center of the highway. (2) In that case there was no fog to obscure the vision. (3) In that case it appeared that the deceased was striking his horse, thus showing that he had seen the train and was trying to clear the crossing in advance of it; while in this case there is no evidence of the conduct of the deceased just prior to the collision. (4) In that case the deceased was far more familiar with the crossing than was the deceased in this case. (5) In that case there was a clear view of the approaching train for at least 100 feet, while in this case there was such view for only about forty-five feet.

All but the first of these alleged differences substantially disappear upon close examination of the evidence. Though the evidence shows that the night was foggy, it shows also that the fog was not such as to materially obscure the vision; certainly that the fog was not sufficient to prevent a traveler in the situation of the deceased from plainly seeing the headlight of the locomotive at any time after the engine came over the crest of the hill. This evidence came almost entirely from the witnesses for the plaintiff, who testify to having

plainly seen the lights shining from the windows of the train at the time of the accident at various distances running from forty rods to half a mile; one even testifying that he was standing on the platform of the depot at Elkhorn, and saw the headlight as the engine appeared on the crest of the hill, more than a mile and a half away.

It is true that there was testimony in the *Haetsch Case* from the fireman of the engine to the effect that he saw the deceased whipping his horse, apparently in order to get across the track before the train; but it will be seen from the opinion on page 308, 87 Wis., that this fact was substantially eliminated from consideration in determining the question of the negligence of the deceased. The case was decided without reference to that fact.

As to the familiarity with the crossing, the difference between the two cases is not substantial. In the *Haetsch Case* the deceased had passed over the crossing far more frequently, but it affirmatively appears in the present case that the deceased was entirely familiar with the road over which he was traveling. He had been a resident of the county for years. He had lived on the farm where he lived at the time of his death nearly two months. From this farm the railroad (though not the crossing) was in sight. His route to Elkhorn, the nearest trading town, was over this road, and he had used it half a dozen times, and on the very trip in question he had said before he left home that perhaps he might wait at Elkhorn until this very train came in. It is idle to claim that he was not perfectly familiar with the road, the crossing, and the train.

As to the view of the train which a traveler upon the highway in the situation of the plaintiff could have had at the time of the accident, and the distance from the crossing at which he could see the approaching headlight, it is claimed that there is a substantial dispute in the testimony, and that there is evidence tending to show that he could not see it until

within forty-five feet of the track.   Careful examination of the testimony, however, shows that there is substantially no dispute.   The fact is established without contradiction that at the time of the accident the headlight of a locomotive on the track at any point between the crest of the hill and the crossing could be seen by a traveler on this highway approaching the crossing from the north at any point within a distance of 500 feet; that is, when the traveler got to a point 500 feet from the crossing, he could see a locomotive headlight approaching from the east all the time after it gained the top of the hill until it reached the crossing, a distance of about three quarters of a mile.   This fact appears from the testimony of three entirely disinterested witnesses, residents of Elkhorn, who made the test with a locomotive, at night, upon the very spot of the accident, within two weeks after it happened, when the conditions were all the same except as to the fog, which, as we have seen, did not interfere materially with the vision of a locomotive headlight. This testimony is also strongly corroborated by a large photograph of the road, crossing, and track, taken a few days after the accident, and attached to the bill of exceptions.   It is true that there were some bunches of willows along the north side of the right of way of the railroad at and near the whistling post (eighty rods from the crossing), and at various points along the track further east.   It is true, also, that there is testimony from witnesses who made some measurements and observations in September, 1894, when the foliage was on the trees, to the effect that these willows obstructed the view of the whistling post and track, or a train thereon, up to a point about forty-five feet north of the railroad track.   This testimony, however, did not meet or contradict the testimony as to the view of a locomotive headlight at night in the month of December.   Both classes of evidence may be true.   Our conclusion is that the testimony which shows that the headlight of an engine com-

Groesbeck vs. Chicago, Milwaukee & St. Paul R. Co.

ing down the hill for nearly three quarters of a mile is vis-ible to a traveler on the highway in the month of December at any point north of the crossing within a distance of 500 feet is without dispute. This fact makes the case before us far stronger against the plaintiff on this point than the *Haetsch Case*.

Thus it will be seen that the only material point in which the case before us is stronger for the plaintiff than the *Haetsch Case* is the fact that the speed of the engine in the present case, when it crossed the center line of the highway, was limited by law to fifteen miles an hour, whereas in fact the evidence tended to show that the speed was as much as sixty miles an hour. This fact is entitled to consideration in determining the question of the alleged contributory neg-ligence of the deceased. The deceased had the right to act upon the assumption that the train would not be moving at a greater rate than fifteen miles an hour when it crossed that highway. *Piper v. C., M. & St. P. R. Co.* 77 Wis. 247. We do not think that this consideration, however, can save the deceased from the imputation of contributory negligence as a matter of law which must follow from the other facts in evidence. The plaintiff's own evidence satisfactorily showed, without dispute, that the deceased was a careful driver and accustomed to handling horses; that his horse was well broken and easily managed; that the deceased undoubtedly approached the crossing at a moderate rate of speed, not ex-ceeding four miles an hour; and that his horse did not run, but pursued an even gait clear up to the crossing. The nat-ure of the evidence which clearly showed these two last-mentioned facts need not be detailed; it is sufficient to say that they were satisfactorily proven. These facts, taken in connection with the facts previously referred to in this opin-ion, namely, that the headlight of the engine could have been seen by the deceased at any point within a distance of 500 feet from the track as soon as the light appeared above

the crest of the hill, and from that point clear to the crossing, clearly show contributory negligence. There is no room left to indulge any presumption that the deceased was exercising ordinary care. Such a presumption undoubtedly exists where there is no testimony showing the conduct of the deceased at the time of the accident, but this is not such a case. This is a case where it affirmatively appears that the deceased approached a crossing with which he was familiar, driving a gentle horse, under control, at a very moderate gait, and that for a distance of 500 feet before reaching the crossing he could have a full view of the headlight of any engine which had passed the crest of the hill.

These facts, as before stated, negative any presumption of ordinary care, and show affirmatively lack of such care. It demonstrates either that the deceased did not look at all, or that, having looked, he deliberately, and with his horse under control, took the risk. In either case there can be no recovery.

*By the Court.*— Judgment affirmed.