PENINSULAR LEAD & COLOR WORKS, Respondent, vs. UNION OIL & PAINT COMPANY and another, Appellants.

*September 2 — September 20, 1898.*

*Constitutional law: Impairing obligation of contracts: Change in remedy: Attachment.*

1. A statute changing the remedy so as to impair materially the value of existing contracts is within the inhibition of sec. 10, art. I, Const. of U. S., providing that no state shall pass any law impairing the obligation of contracts.

2. Thus, sec. 3, ch. 334, Laws of 1897 (providing that whenever the property of an insolvent debtor is attached or levied upon by virtue of any process in favor of a creditor, such debtor may, within ten days thereafter, make an assignment of all his property for the equal benefit of all his creditors as provided by law, whereupon all such attachments, levies, etc., shall be dissolved and the property attached or levied upon shall be turned over to the assignee), is void so far as it attempts to take away, in respect to debts contracted before its enactment, the right of a creditor to obtain, by attachment, a preference over other creditors. CASSODAY, C. J., dissents.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

At the time ch. 334, Laws of 1897, went into effect, defendant *Union Oil & Paint Company* was indebted to plaintiff for merchandise sold defendant by plaintiff in the regular course of business. Subsequently suit was brought to recover such indebtedness, and the property of the defendant was duly attached to satisfy the plaintiff's claim. Within ten days after the attachment, the defendant made and perfected an assignment for the benefit of creditors, and thereafter, pursuant to ch. 334 aforesaid, moved the court for an order vacating the attachment in consequence of the making of the assignment. The motion was denied, and the petitioners appealed.

For the appellants there was a brief by *D. S. Rose* and

*Bloodgood, Kemper & Bloodgood,* attorneys, and *Jackson B. Kemper,* of counsel, and oral argument by *Jackson B. Kemper.* They contended, *inter alia,* that many changes made in existing laws which, while they affect the remedy yet leave a valid and subsisting remedy, have been held valid, even though in particular instances they might work hardship, or even loss, to the parties holding the contract; as for instance, statutes relating to limitations (*Terry v. Anderson,* 95 U. S. 628), or statutes increasing the time to answer (*Von Baumbach v. Bade,* 9 Wis. 560). It is generally held that the right to a particular remedy is not a *vested right* if there is a substantial remedy. Cooley, Const. Lim. (5th ed.), 443; *People ex rel. Witherbee v. Sup'rs of Essex Co.* 70 N. Y. 228; *Comm. ex rel. Springfield v. Comm'rs of Highways,* 6 Pick. 501; *Templeton v. Horne,* 82 Ill. 491; *Frost v. Ilsley,* 54 Me. 345. In this case the plaintiff invoked a provisional remedy which has not yet ripened into judgment, and consequently, until that has been done, the legislature may change the remedy or take it away altogether. *Freiberg v. Singer,* 90 Wis. 608; *Bigelow v. Pritchard,* 21 Pick. 169; *Baldwin v. Buzwell,* 52 Vt. 57; *Baum v. Raphael,* 57 Cal. 361. The question whether the denying or altering of a remedy impairs the obligation of a contract is one of reasonableness, of which the legislature is primarily the judge, and its decision should only be overruled in case of palpable error. *Antoni v. Greenhow,* 107 U. S. 769; *McGahey v. Virginia,* 135 id. 662.

For the respondent there was a brief by *Miller, Noyes, Miller & Wahl,* and oral argument by *Geo. P. Miller.*

MARSHALL, J. When the contract was made on which the writ of attachment issued, the creditor had the absolute right, on the facts set forth in the affidavit, to that remedy to secure the payment of the indebtedness. In case of a resort to such remedy and the acquirement of a lien on the

debtor's property thereby, there was nothing in the law of assignments for the benefit of creditors whereby the creditor's right of preference over all other creditors as to such property, to the extent of the attachment lien, could be taken away, though such laws had all the elements of a bankrupt law even to the absolute discharge of all debts of the debtor on his conveying his property not exempt from attachment or execution for the benefit of his creditors, and complying with the prescribed procedure in such cases.   All assignments containing preferences, all preferences given or secured by the act of the debtor by confession of judgment within sixty days of the making of an assignment, or by giving security upon or parting with his property in any manner whatever, in contemplation of insolvency within such time, were declared void, provided the person benefited thereby knew, or had reasonable cause to believe, the debtor to be insolvent.   There was still left to creditors, however, the remedy of securing, by attachment or garnishment proceedings conducted in good faith, a preference over other creditors of the debtor, which could not be disturbed by a subsequent assignment.

With that condition of things existing, ch. 334, Laws of 1897, was passed for the purpose of taking away the opportunity for obtaining a preference by attachment, which purpose was effectually accomplished as to all contracts, whether then existing or subsequently made, if it is valid as to such prior contracts.   It provides in sec. 3, that, "whenever the property of an insolvent debtor is attached or levied upon by virtue of any process in favor of a creditor, or a garnishment is made against such a debtor, such debtor may, within ten days thereafter, make an assignment of all his property and estate not exempt by law, for the equal benefit of all his creditors as provided by law, whereupon all such attachments, levies, garnishments, or other process shall be dissolved and the property attached or levied upon shall be

turned over to such assignee or receiver." Prior to that en-
actment, no assignment could in any way defeat a debtor's
prior attachment. The act not only took away the remedy
by attachment, but left none whatever to the creditor for
the collection of his claim except that of participating in
the assignment proceedings and taking his distributive share
of the debtor's property equally with all other creditors in
proportion to their respective claims, in full settlement and
discharge thereof. The proceedings in this case raise the
single question of whether the act referred to, so far as it
attempts to take from creditors rights existing when it took
effect, is void because prohibited by sec. 10 of art. I of the
Constitution of the United States, which provides that "no
state shall . . . pass any law impairing the obligation
of contracts."

The case is ruled by *Second Ward Sav. Bank v. Schranck*,
97 Wis. 250. The law governing the subject was there so
fully discussed and clearly declared in the exhaustive opin-
ion written by Mr. Justice PINNEY, that little if anything
can be added to it or said without danger of repeating in
substance what was there said. The decision of the court,
as stated in unmistakable language, was that a statute af-
fecting the relations between debtor and creditor as to exist-
ing contracts, so as to impair materially their value by act-
ing on the remedy alone, in effect substantially impairs the
obligations of such contracts and is void on that account the
same as though such legislation acted directly on the con-
tracts themselves. That was but reiterating what has been
said by this court frequently before, and by the highest
court in the land, whose judgments as to the meaning of
the federal constitution are binding on this and all courts.

The question really seems hardly open to discussion at all
at this late day. Courts can draw no distinction between
the right and the remedy where the latter affects materially
the value of the contract obligation, and say the former is,

Peninsular Lead & Color Works vs. Union Oil & Paint Co. and another.

and the latter not, within the scope of the constitutional inhibition upon the states. The debates in the constitutional convention show most clearly that legislative interference with the rights of creditors by operating upon the remedy for the enforcement of contracts by means of exemption laws, stay laws, unreasonable limitation laws, laws bearing on the value of the medium of payment, tender laws, and other like ways, were the very mischiefs which it was intended to prevent under the new order of things, by conferring upon the general government exclusive power to coin money and fix the value thereof, and by prohibiting the states from issuing paper money or making anything but gold and silver a tender in the payment of debts, or making any law impairing the obligation of contracts. Mr. Madison, replying to objections to the latter prohibition, in that it would prevent legislation as to remedies to recover debts, and to observations that circumstances might arise rendering such interferences proper and essential, said, in substance, that the inconvenience would be overbalanced by the utility of it, and that, without an absolute prohibition, evasions might and would be devised by the ingenuity of legislatures. The truth of that observation, and the wisdom of adopting a safeguard against the dangers it pointed out, are evidenced by the repeated attempts to overcome such safeguard, some of which attempts, it may be claimed with reason, have successfully passed the scrutiny of the court which is the special guardian of the constitution; but no attempt such as the one under consideration, it is believed, has been successful, though it was early insisted that a law acting merely upon the remedy was not within the constitutional prohibition.

In *Green v. Biddle*, 8 Wheat. 1, it was insisted that the law there considered was valid because it acted merely upon the remedy, not upon the right, and in deciding the point the court said: "It is no answer to the law to say it is a regula-

tion of the remedy, not the right.   If the act so changes the nature and extent of existing remedies as to materially impair the right, it is just as much a violation of the contract as if it directly overturned the right." That language was approved in *Bronson v. Kinzie*, 1 How. 311, the court speaking by Chief Justice TANEY to the effect that it is manifest that the obligations of contracts and the rights of parties under them may be effectually destroyed by acting on the remedy, and that no one can rightfully claim any difference in the result between retrospective laws declaring contracts void, and such laws so affecting the remedy for their enforcement as to materially impair their value.   In *Gunn v. Barry*, 15 Wall. 610, the question of whether an act changing the law in relation to exemptions from execution injuriously to creditors, was invalid as to existing debts, was presented and the decision was in the affirmative, Mr. Justice SWAYNE, who delivered the opinion, saying: "The legal remedies for the enforcement of a contract, which belong to it at the time and place where it is made, are a part of its obligation.   A state may change them, provided the change involves no impairment of a substantial right.   If the provision of the constitution or the legislative act of a state fall within the category last mentioned, they are to that extent utterly void. They are, for all the purposes of the contract which they impair, as if they had never existed." In *Edwards v. Kearzey*, 96 U. S. 595, the validity of a law increasing the amount of property exempt from execution, as to then existing contract obligations, was the point at issue, and in support of the law it was argued that remedies existing when the contract is made do not become a part of its obligations, therefore a change in that regard does not deny the creditor's rights, but merely regulates the manner of enforcing them. To that contention the court, by Mr. Justice SWAYNE, answered that the obligations of a contract include everything within its obligatory scope, and among such elements noth-

Peninsular Lead & Color Works vs. Union Oil & Paint Co. and another.

ing is more important than the means of enforcement; they are the breath of its vital existence, without which the contract, as such, in the view of the law, ceases to be; rights and remedies are so inseparably connected that neither can exist without the other. All laws which subsist when the contract is made enter into it and form a part of it as if they were expressly incorporated in its terms. Such rule comprises those that affect its validity, construction, and discharge, and its enforcement as well, and one of the tests of whether a contract has been impaired by legislation is that its value has been by that means diminished; for it is not, by the constitution, to be impaired at all in any manner or for any cause.

Applying the foregoing to the situation presented by this case, there can be but one answer to the legal issue before us. Not that remedies cannot be changed at all, but that they cannot be changed at all so as to affect materially the value of existing contract obligations. Certainly, if a law changing the legal exemptions of property from the payment of debts comes within that rule, a law placing all the property of the debtor beyond the right of adversary proceedings for the collection of debts, leaving only the remedy of taking a distributive share in insolvency proceedings, however small, in full discharge of the indebtedness, must be within the rule. As well said by District Judge SEAMAN of the United States circuit court for the Eastern district of Wisconsin, in *Heath & Milligan Mfg. Co. v. Union O. & P. Co.*, recently decided and reported in 83 Fed. Rep. 776, involving the same question: "We cannot entertain any reasonable doubt that the inhibition applies in this case." When the contract was made it became a valuable part of it that if the debt were fraudulently contracted the creditor might secure his claim by attaching the debtor's property. The contingency arose. The valuable remedy, without which, under the circumstances, the value of the contract was ma-

terially lessened if not wholly destroyed, was resorted to, and then the creditor was confronted with the fact that in the meantime the legislature had attempted to empower the debtor to destroy that remedy, leaving the creditor no way of effectually securing his claim.

A specific reference to authorities on the subject discussed would not be at all complete without the following: *Louisiana v. New Orleans*, 102 U. S. 203; *Denny v. Bennett*, 128 U. S. 489; *Barnitz v. Beverly*, 163 U. S. 118; *Sloane v. Chiniquy*, 22 Fed. Rep. 213; *Seibert v. Lewis*, 122 U. S. 284; *Shapleigh v. San Angelo*, 167 U. S. 646. In the last case cited it was held that the owner of an obligation for the payment of money is entitled not merely to the contract of payment expressed therein, but to the remedies existing when the contract was made, by implication of law. To the same effect, said Mr. Justice FIELD in *Louisiana v. New Orleans, supra,* the obligation of a contract in a constitutional sense is the means provided for its enforcement; that which lessens such means impairs the obligation. And again, said Mr. Justice MILLER in *Sloane v. Chiniquy, supra,* as regards previously existing debts, a law which takes away the right of a creditor to attach the property of his debtor, as such law existed at the time the debt was contracted, is void.

True, as often suggested in support of retrospective laws that affect contract obligations by acting merely upon the remedy, laws abolishing imprisonment for debt and changing the statutory period for the commencement of actions to enforce contract obligations have been sustained; but as to the former they were sustained because imprisonment for debt was not, strictly so called, a remedy for the collection of debts, but a punishment,— as regards the mere collection of debts the very opposite of a remedy; and as to laws changing the statutory period of limitation upon the enforcement of contracts, they have only been sustained

when the change left ample opportunity for such enforcement, so as not to materially impair the value of pre-existing contracts. *Edwards v. Kearzey*, 96 U. S. 595.

The conclusion reached here has been the settled law of this court since first the question was presented to it for determination. Going back to the able opinion of Chief Justice DIXON in *Von Baumbach v. Bade*, 9 Wis. 559, we find the court quoting and following closely *Bronson v. Kinzie*, 1 How. 311, to the effect that a contract includes, by implication, the law for its enforcement as the same existed at its inception, and any change materially impairing the rights or interests of the parties, so it may be said the contract obligation is impaired, is within the constitutional inhibition and void.

True, as contended by counsel for appellants, there is language in *Freiberg v. Singer*, 90 Wis. 608, which, when read apart from the questions there raised and decided, appears to be in conflict with earlier cases in this court and the law as here stated, but it must be remembered that nothing is deemed decided in any case, for the purposes of future cases, but the questions upon which the decision turns. A validating act had been passed affecting assignments for the benefit of creditors after a garnishee creditor had obtained a lien on the property of his debtor by garnishee proceedings. After such act went into effect, the trial court held that the assignment related back to the attempted making of it, and dismissed the garnishee proceedings. The question raised on that situation was whether the act was retroactive and, if so, whether it was void as an exercise of judicial power. As to whether it was within the condemnation of the constitutional inhibition against state legislation impairing the obligation of contracts was not suggested in the briefs of counsel or on the oral argument, or considered by the court. If it had been, whether the decision of the case would have been the same may be left, for the present at least, to be as-

sumed from the reasoning of this opinion and others in this court to which we have referred. The language of Mr. Justice PINNEY, to the effect that the remedy was given by statute and until the action had proceeded to judgment the legislature might change it or take away the right of action altogether, was an answer solely to the claim that such legislation was an attempt to exercise judicial power, not by any means a declaration that the legislature may act at will before judgment on the remedy for the enforcement of contract obligations, regardless of whether it impairs such obligations.

*By the Court.*— The order is affirmed.

CASSODAY, C. J.   The decision of this case appears to be within the scope of the opinion filed on behalf of the majority of the court in *Second Ward Sav. Bank v. Schranck*, 97 Wis. 250–268. I filed a dissenting opinion in that case. For the reasons given in that opinion I am compelled to dissent in this case. To my mind, the obligations of the contract were not impaired by the mere modification of the statutory remedy so far as to dissolve the attachment if made within ten days prior to the debtor's assignment for the benefit of his creditors. In fact, it is less objectionable in that respect than it was to absolutely abolish the remedy by imprisonment for debt, which existed before the federal constitution was adopted. As this case turns upon a question which can only be authoritatively decided by the supreme court of the United States, I do not feel bound by the former decision mentioned.