VANT, Administratrix, Appellant, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent.

*November 23 — December 16, 1898.*

*Railroads: Death at crossing: Contributory negligence: Court and jury.*

A man and a boy thirteen years old were riding on the reach or running gear of a wagon drawn by a span of horses, through a private lane frequently used by the public, and approaching a railroad crossing, with their backs toward the direction from which a train was coming. They were acquainted with the surroundings, and the train was a little late and was moving at an unlawful rate of speed, but could have been seen by them at a distance of ninety-four rods. As they were attempting to cross the track they were struck by the train and killed. In an action to recover for the death of the boy, *held,* that a nonsuit was rightly granted on the ground of contributory negligence.

APPEAL from a judgment of the circuit court for Sauk county: R. G. SIEBECKER, Circuit Judge. · *Affirmed.*

*James A. Stone,* attorney, and *Gilbert E. Roe,* of counsel, for the appellant, argued, among other things, that the circumstances were such as to clearly make it a question for the jury whether the defendant's failure to give any signal of the approach of the train was negligence. *Heath v. Stewart,* 90 Wis. 418; *Winstanley v. C., M. & St. P. R. Co.* 72 id. 375; *Leitch v. C. & N. W. R. Co.* 93 id. 79. The railroad company, by its acquiescence in the public use of this crossing, took upon

itself the duty to exercise reasonable care to protect those .
crossing from injury.   8 Am. & Eng. Ency. of Law (2d ed.),
412, 424;  *Bishop v. C., M. & St. P. R. Co.* 4 N. Dak. 536;
*Johnson v. Great Northern R. Co.* 75 N. W. Rep. (N. D.), 250;
*Chicago, B. & Q. R. Co. v. Pollard,* 53 Neb. 730.   If there
is any room for argument as to what facts are established,
or if unbiased minds may differ, the question is one for the
jury.   *Valin v. M. & N. R. Co.* 82 Wis. 1; *Morrison v. Madi-
son,* 96 id. 452; *Crites v. New Richmond,* 98 id. 55.

For the respondent there was a brief by *Fish, Cary, Upham
& Black,* and oral argument by *John T. Fish.*

CASSODAY, C. J.   This is an action to recover damages for
the death of the plaintiff's intestate, Byron Vant, the plaint-
iff's minor son, who was struck by the defendant's train Au-
gust 26, 1897, about 11 o'clock a. m., at a railroad crossing
within the city limits of Reedsburg, and died in consequence
five days afterwards.   The complaint is in the usual form.
The defendant answered by way of admissions and denials.
At the close of the trial the court granted a nonsuit, and
from the judgment entered thereon the plaintiff brings this
appeal.

The circumstances of the injury are to the effect that the
defendant's track runs out of Reedsburg nearly in a north-
westerly direction; that about forty-two rods easterly from
the west line of the city limits is a private lane twenty and
one-half feet wide, running substantially north and south
across the defendant's right of way and track,— bounded by
a wire fence on either side; that on the northerly line of the
right of way there was, at the time, a gate sixteen feet wide
across the lane, which opened upon the right of way and
toward and upon the east side of the lane, and which was
at the time in question open, and had been left open for
months, and extended to within from two to four feet of a
telegraph pole also standing in the right of way and just

east of the traveled track on the right of way, which was about ten feet wide and sloped to the east and west, and ascended slightly from the gate to the rails, and the right of way on either side of the traveled track was more or less rough, and especially on the east side, where it descended from two to three feet in thirty-six feet at a point ten feet north of the rail, and on the west side the descent was only about one half as great; that from the northerly line of the right of way to the southerly line of the right of way, along the traveled track, was 106 feet, of which fifty-four and one-half feet was north of the railway track; that about sixty rods east of the crossing was a deep cut, which would prevent the view of an approaching train from the east, and upon the east side of the lane, and sixty feet north of the right of way, was a dwelling house, which would obstruct the view of a train coming from the east; that on the west side of the lane, and for twenty rods north of the crossing, there was nothing to obstruct the view of an approaching train for a distance of eighty rods from the crossing, except a wire fence, and, after reaching the right of way, there was nothing to obstruct the view of an approaching train for a distance of ninety-four rods; that on the morning in question, and a few minutes after 11 o'clock, the deceased and his uncle, who was about forty-three years of age and of average strength and familiar with handling horses, were approaching the crossing in the lane from the north with a team and the running gear of a lumber wagon, with no box on, sitting with their faces easterly, on the hind part of the wagon, on the reach and the hounds,— perhaps on the axle-tree,— and driving on a slow walk of from two and one-half to three miles per hour, and when on the crossing the wagon was struck by the train due in Reedsburg at four minutes after 11 o'clock, coming from the west, throwing the horses upon the south side of the track, and the wagon except a part of the tongue upon the north side of the track, and

the bodies of the two persons were thrown to the north side of the track,— one about twenty-five feet, and the other sixty feet, from the crossing; that the off horse was killed and the other was apparently unhurt.

In granting the nonsuit the trial court stated, in effect, that the case must be decided wholly upon the undisputed evidence; that the evidence bearing upon the questions involved, and urged as determining the plaintiff's rights, was that the approach of this track from the north, from which direction the plaintiff's intestate was coming, was so situated with reference to the track that a train could be observed for a distance of ninety-four rods northwest, the direction from which the train in question was coming; that between that point and the crossing the corporate limits were fixed, where the parties had a right to presume that the train would be run at the legal rate of speed; that this train must be assumed to have been running, under the testimony, at the highest rate of speed mentioned (sixty miles an hour), which was negligence on the part of the defendant; that the other charge, that there were no signals given, must be a question to be submitted to the jury as to whether it would have constituted negligence or not, in view of the fact that this was a private crossing; that this was a regular passenger train, and, though a few minutes late, yet that did not relieve the public from the care which was required in attempting to cross the track when such a train was about to pass the crossing; that the rule of law established by the decisions is to the effect that though there may be negligence on the part of the defendant in running trains faster than the legal rate of speed, and, though persons had a right to presume that this train would run at the regular rate of speed when it arrived at the corporate limits, yet if it also appears that the persons so attempting to make the crossing, in view of the whole situation and what was plainly before their eyes, were careless in attempting to do so if they saw the train,

or were careless in not looking to see the train, then the right to recover is defeated, and no question of supervening negligence can arise to determine the rights of the parties.

The lane in question was narrow, and it is conceded that it was not a good place for a team, approaching the crossing from the north, to turn to the east when inside of the right of way. The complaint alleges that the deceased was at the time of the injury traveling upon a street opened many years prior thereto as a private way, but which had long prior thereto ceased to be used as such, and, with the knowledge, consent, and license of the defendant, had come into very general and constant use by the public as a street for travel thereon. Such allegations were denied by the answer, and there was no attempt to prove that the lane in question constituted a public highway, and there is no pretense that it was a public highway. The most that is claimed is that it was much traveled,— more than the ordinary country highway; that during the last few years an average of fifteen or twenty-five teams crossed the railroad daily at that crossing; and that the gates on each side of the track had been open for months. These facts, brought home to the defendant, would, undoubtedly, increase the vigilance and care required of the defendant to avoid collisions at the crossing. *Anderson v. C., St. P., M. & O. R. Co.* 87 Wis. 195; *Mason v. C., St. P., M. & O. R. Co.* 89 Wis. 151. But they did not make the defendant responsible for the narrowness of the lane; nor require it to restore and maintain the same to its former condition of usefulness, as in the case of a public street or highway. Stats. 1898, sec. 1828, subd. 5, and sec. 1836. The railway was there for the purpose of running trains over it. That was obvious to everybody having occasion to cross. The train in question was due about the time of the injury. The driver was a mature man, and lived near, and must have known of the conditions present. If he failed to look and observe the

coming train, then he was guilty of contributory negligence which would prevent a recovery. If he kept a proper lookout, and saw the coming train, and took his chances, then he was simply reckless. Assumptions as to the speed of moving trains in cities may be indulged when they are not in sight, but cannot be relied upon by travelers who have a plain view of the coming train, and hence are bound to observe its speed. *Langhoff v. M. & P. du C. R. Co.* 23 Wis. 43; *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378; *Chase v. M. C. R. Co.* 167 Mass. 383. The ruling of the trial court is in strict accord with numerous and some very recent decisions of this court. *Groesbeck v. C., M. & St. P. R. Co.* 93 Wis. 505; *Schneider v. C., M. & St. P. R. Co., supra,* and cases there cited.

*By the Court.*— The judgment of the circuit court is affirmed.