Buckmaster vs. Chicago & Northwestern R. Co.

BUCKMASTER, Administrator, Appellant, vs. CHICAGO & NORTH-
WESTERN RAILWAY COMPANY, Respondent.

| | |
|---|---|
| 108 | 353 |
| 112 | 163 |
| 56 LRA | 251 |
| 108 | 353 |
| 115 | 206 |

*November 19 — December 7, 1900.*

*Railroads: Killing of brakeman on track: Contributory negligence:
Court and jury.*

Plaintiff's intestate, a brakeman on an east-bound train which had
been stopped by some obstruction while passing from the main
track onto a side track at a station, about midnight, was sent back
about half a mile to the west with lanterns and torpedoes to signal
any train coming from that direction. By the rules of the com-
pany a red lantern placed between the tracks was a danger signal,
requiring all trains to stop. Meanwhile, the obstruction being re-
moved, the train passed onto the side track, and another train,
which had come from the east, started westward. The intestate
had then been gone about fifteen minutes. It did not appear
whether or not the engineer of the west-bound train had any
knowledge respecting him. His red lantern was standing between
the rails about half a mile west of the station, and his white lan-
tern outside of the rails. The track from the station to this point
was straight and the lanterns in plain sight. The west-bound train
had acquired a velocity of ten or fifteen miles an hour when it ran
over the lanterns, breaking the red one, and ran over and killed the
intestate, who must have been struck within a few feet of the lan-
terns. There was no evidence as to the giving of any signals.
*Held* that, as a matter of law, the deceased must have had knowl-
edge of the approaching train and have been guilty of contribu-
tory negligence. WINSLOW, J., dissents.

APPEAL from a judgment of the circuit court for Keno-
sha county: S. D. HASTINGS, JR., Judge. *Affirmed.*

Action by administrator on behalf of widow for damages
resulting from the death of Ralph Tabor by alleged negli-
gence of defendant. It appeared that Tabor, on May 11,
1898, was a brakeman running upon one of defendant's
trains eastward through the town of Salem, in Kenosha
county; that as his train was passing from the main track
onto a side track, about midnight, it met with some obstruc-

tion or difficulty, stopping it partly on the main track, where-upon he was directed to go back westward about half a mile with both red and white lanterns, in order to flag any approaching train from that direction. That was part of his duty as a brakeman in operating his train. It appeared by the rules of the company that a red flag by day or a red lantern by night, placed between the tracks, constituted a danger signal, and any train must stop before passing it; that, in case of any stoppage on the main track between stations, the conductor must immediately send a flagman back with a red lantern and torpedoes at least half a mile. Such flagman is then to place torpedoes on the rails, and to remain there with his red lantern, to signal any approaching train until he receives a recall signal. Other rules emphasizing, but not materially modifying, the duty of men running trains to stop at such a signal, need not be quoted.

Meanwhile another train of the company came from the eastward to the station of Salem, and, when the obstacle to Tabor's train had been removed and it had passed onto the side track, such other train proceeded westward. Tabor had then been gone about fifteen minutes. There is no evidence as to whether the engineer or fireman of the west-bound train had any knowledge with reference to him. Tabor's red lantern was standing between the rails about half a mile west of Salem station; his white lantern outside of the rails. The track from the station to this point was entirely straight and unobstructed, and elevated five or six feet above the surrounding country, so that the lanterns were in plain sight. There is no evidence from the train-men as to the occurrence, except from the brakeman of the west-bound train, who states that it had acquired a velocity of ten or fifteen miles an hour when it ran over the lanterns, breaking the red lantern to pieces, but not the white one, and ran over Tabor, whose body was found three or four rods west of the red lantern, but fragments of clothing and

of his body were found within six feet thereof and scattered along the track.   There is no evidence as to the giving of any signals.   A former answer which had been interposed by defendant in a previous action brought for this same injury, which was dismissed, not on the merits, was offered in evidence and excluded.   That answer admitted that the lanterns were seen by defendant's employees operating the west-bound train.

At the close of plaintiff's testimony both parties rested, and on motion the court directed a verdict for defendant, whereupon judgment was entered, from which the plaintiff appeals.

For the appellant there was a brief by *A. E. Buckmaster* and *Heren, Robertson & Long,* and oral argument by *Mr. Buckmaster.*

*Edward M. Hyzer,* for the respondent.

Dodge, J.   In the view we have taken upon the question of contributory negligence it becomes unnecessary to decide whether the breach of duty and regulation committed by the engineer of the west-bound freight train in running over and past the red-lantern signal to stop because of danger could be the proximate cause of Tabor's death, though much discussed by counsel.   Neither need we pass upon the admissibility in evidence of defendant's former answer.

Considering the conduct of deceased, it must be conceded that the circumstances whereby the main track to the eastward of Tabor was blocked by his own train, so that he had no reason to expect the approach of a train from that direction, and the fact that his duty required his attention to be turned towards the west in the placing of lantern and torpedoes and in looking out for a train from that direction, were such as very largely to excuse inattention toward the east, and might render non-negligent failure to observe approach of a train therefrom, if it could be believed that he

in fact remained in ignorance thereof. But upon the most careful consideration we are convinced that such ignorance could not exist, that it was beyond reasonable possibility in view of the ordinary and uniform course of nature and of human nature. The man, shown to be healthy and alert, in possession of all his senses, in the stillness of midnight in May was approached by a freight train, which got under way only half a mile from him, and ran that half mile continually increasing its speed till at the time of the injury a speed of ten or fifteen miles had been attained, on a perfectly straight track elevated above the surface of the surrounding country. Whatever other duties he had to perform, these events could not have taken place without such a clamor of noises, significant to him as a railroad man, as must have informed and warned him. The noise of a freight train in the country, at midnight, is not a thing to pass unnoticed by any one in possession of the sense of hearing, unless, indeed, he be surrounded by other distracting noises, a circumstance not here present. Again, whether he were facing east or west the glare of the headlight must have so surrounded him that he could not have been oblivious to it. Thus, also, he must have been warned long enough before the train reached him to have enabled his escape from the track.

As the approach of this train was necessarily apparent to Tabor's senses, both sight and hearing, it is but the application of rules well established in this court to hold that the inference that he did see and hear is unavoidable, and that the jury could not have drawn a contrary one; nay, could not have been permitted to believe Tabor's direct testimony to the contrary had he been alive and given such evidence. *Haetsch v. C. & N. W. R. Co.* 87 Wis. 304, 311; *Steinhofel v. C., M. & St. P. R. Co.* 92 Wis. 123; *Cawley v. La Crosse City R. Co.* 101 Wis. 145, 152; *Koester v. C. & N. W. R. Co.* 106 Wis. 460, 465. If he knew that the train was approaching,

Buckmaster vs. Chicago & Northwestern R. Co.

no reason consistent with due care can account for his pres-
ence upon the track in front of it. His duties, if he were
engaged in any, even though the rules require that train to
stop at the red lantern, could not justify him in remaining
on the track until the train reached him (*Hulien v. C. & N.
W. R. Co.* 107 Wis. 122); nor if, as seems not improbable, he
had gone to a distance from his lanterns, could he be justified
in risking his life by effort to rescue them from in front of
the approaching train. No other or more charitable theory
to account for his presence on the track can be reasonably
entertained. If the accident be one which could happen
only through decedent's negligence, then, of course, the ac-
cident itself establishes such negligence. *Cummings v. Nat.
F. Co.* 60 Wis. 614; *Groesbeck v. C., M. & St. P. R. Co.* 93
Wis. 505, 513. Such, we are convinced, is the case here.
Tabor could not, in human possibility, have been upon the
track without knowledge of the approach of this train, and,
having knowledge, he could not have either remained or
gone there in face of the peril without negligence. In such
view of the case the direction of a verdict for defendant was
properly given.

*By the Court.*— Judgment affirmed.

WINSLOW, J. I cannot agree that the evidence proves
Tabor to have been guilty of contributory negligence as a
matter of law. He was performing a duty which could
only be performed upon the track, and which demanded
that his attention be directed forward and not backward.
He expected no train from the rear; at least there is no evi-
dence to show that any such train was expected by any one.
His red lantern was on the track, and was a signal requir-
ing all trains to stop. It is evident he was with the lan-
terns. Presumptively he was performing the duty on which
he was set. It is reasonable to suppose that he was endeav-
oring to disengage the torpedoes, which were tied to one of

the lanterns; but, whether this be true or not, there is no presumption that he was not doing some necessary act in discharge of his duty, and no proof, in my judgment, which shows as matter of law that he was not.

It is said that, if exercising ordinary care, he must have seen the headlight or heard the noise of the approaching train. This might well be said of a person approaching a crossing, but can it be said of the deceased? I think not. He was performing a duty requiring his presence on the track and his attention to the front. His lanterns were burning brightly by his side. They must, by reason of their close proximity, have outshone the approaching headlight until it was very close to him, perhaps too close to escape. His own train was within half a mile of him, and he knew that it could naturally be making some movements in his absence (as in fact it did). If, with this knowledge, surrounded by his own lanterns and intent on his duty, which required expedition, he did not see the headlight and did not discover that the noise was that of another train, rather than his own, until too late, can it be said as matter of law that he was exercising less than ordinary care? In my judgment this question should be answered in the negative. I think the engineer of the defendant's train was clearly guilty of negligence in running over the danger signal without stop or warning, and that the question of contributory negligence was properly one for the jury.