CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS
RAILWAY COMPANY *v.* GODDARD,
ADMINISTRATOR.

[No. 4,892. Filed June 8, 1904.]

NEGLIGENCE.—*Contributory* —*Pleading.*—In an action for personal injuries it is only necessary, under §359a Burns 1901, to allege that the defendant's negligence was the proximate cause of the plaintiff's injury, and this is sufficient unless the complaint discloses the contributory negligence of the injured party. *p. 325.*

Cleveland, etc., R. Co. *v.* Goddard.

NEGLIGENCE.— *Contributory.*—*Answers to Interrogatories.*— *Conflict with Verdict.*—In an action for damages for personal injuries and death resulting from the alleged negligence of defendant's yardmaster in opening a switch, without notice to decedent, the answers to interrogatories showed that decedent as brakeman was walking between the tracks with a lantern, and, by the exercise of ordinary care, could have seen that the switch was open, but that he reversed the lever which closed the switch and caused the cars to continue on the main track, causing the injury. *Held,* that the answers to the interrogatories showed decedent guilty of contributory negligence, and were in irreconcilable conflict with a general verdict for plaintiff. *pp. 325-329.*

From Decatur Circuit Court; *J. K. Ewing,* Special Judge.

Action by John F. Goddard, administrator of the estate of John H. Binder, deceased, against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*L. J. Hackney, J. T. Dye, M. D. Tackett* and *Davison Wilson,* for appellant.

*B. F. Bennett, T. E. Davidson* and *Craig & Smiley,* for appellee.

COMSTOCK, J.—Appellee sued appellant for damages sustained in the personal injury and death of John H. Binder, an employe of appellant, resulting from the alleged negligence of the appellant. The issues were formed upon an amended complaint in one paragraph, to which the trial court overruled a demurrer, and upon the appellant's answer in general denial. A trial by jury resulted in a general verdict in favor of appellee for $2,800. With the general verdict the jury returned answers to special interrogatories. The court overruled appellant's motion for judgment *non obstante.*

The first specification of error questions the sufficiency of the amended complaint; the second, the action of the court in overruling appellant's motion for a new trial; the third, the overruling of appellant's motion for judgment *non obstante,*

The amended complaint is based upon subdivision four of §7083 Burns 1901: "Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any  *  .*  *  switch yard." The complaint avers that on the 8th day of March, 1901, the appellant maintained railway yards on the west side of Greensburg. In the yards were several tracks, one of which was known as the "Chicago passing track," and another as "storage track No. 8." This storage track was connected and disconnected from the passing track with a switch at the east end of the storage track. On the evening of that day John H. Binder was an employe of appellant, engaged as brakeman on a mixed train which had come into the yard from Columbus. The engine, with the freight-cars of the train, had gone forward upon the passing track to a point east of the switch, and it was desired to back the cars over the passing track and upon said storage track. It was Binder's duty to open the switch to admit the cars, and, as the cars were backed toward the switch, he preceded them, turned the switch, and continued west on the passing track. Shortly before Binder went to the switch, one Charles Simcox, the yardmaster, had opened the switch for said cars, thus connecting said storage track with the passing track, and placing the same in position to admit said cars upon the storage track. Binder reversed the switch, diverting the cars from the storage track, and continuing them upon the passing track, where they ran over him and inflicted the injuries from which he died. The switch was operated by hand, and was controlled by throwing a lever. Its normal and usual position disconnected the storage track from the passing track.

The essential allegations, in addition to the facts above stated, are as follows: That the rules of defendant in force at said time required that said ground switch should remain in its normal position as aforesaid, unless it was changed for the purpose of putting cars into or taking cars

out of said storage track as aforesaid; that it had been the practice and custom of defendant's servants using said switch and tracks, for at least one year prior to decedent's injury, to leave said ground switch in its normal position, until it became necessary to disconnect from the passing track and connect with the storage track, which custom and practice was known to both defendant and decedent; that a short time before plaintiff's decedent reached said ground switch as aforesaid, for the purpose of throwing the same as aforesaid, and without any notice or warning to the plaintiff's decedent of his intention so to do, said Simcox carelessly, negligently, and wrongfully threw said ground switch from its normal position, and carelessly, negligently, and wrongfully disconnected said track coming from the east, as aforesaid, from said Chicago passing track, and connecting said track from the east, and being the same track over which said west-bound freight-cars should pass, with said storage track No. 8; that it was no part of the duty of said Simcox as such yardmaster to throw said switch; that the said Simcox carelessly and negligently failed to notify plaintiff's decedent, or give him any notice or warning whatsoever, of his intention to throw said switch before he did throw the same, and carelessly and negligently failed to notify the plaintiff's decedent that he had thrown the said switch and disconnected said storage track from said passing track, and connected said track from the east with the said storage track; that plaintiff's decedent had no notice, knowledge, or warning that the position of said ground switch had been changed, nor that said track from the east had been disconnected from said Chicago passing track and connected with said storage track No. 8, but believed that said track from the east was connected with said Chicago passing track and disconnected from said storage track No. 8, and that said ground switch was in its normal position, and relied thereon, and could not have known thereof by the exercise of ordinary care and

diligence, and without fault or negligence on his part threw said switch to connect said track from the east with said storage track, so that said west-bound freight-cars could pass therein, and then passed from said switch over and upon said Chicago passing track to avoid said backing west-bound freight-cars, and proceeded to pass along said Chicago passing track, going west for the further performance of his duties in connection with said west-bound freight-cars; that at the time plaintiff's decedent was injured, and at the time he threw the switch as herein averred, the night was dark and foggy.

In the discussion of the sufficiency of the complaint it is not claimed that it fails to charge negligence upon the part of appellant, but that it affirmatively discloses the contributory negligence of the decedent. In an action for personal injury, under §359a Burns 1901 (Acts 1899, p. 58), it is only necessary to allege that the defendant's negligence was the proximate cause of the plaintiff's injury, and this is sufficient unless the complaint discloses the contributory negligence of the injured party. *Southern Ind. R. Co.* v. *Peyton,* 157 Ind. 690. If the objection were well founded it would be fatal. But the complaint not only alleges that the decedent was without fault, but that he had no notice, knowledge, or warning of the change of the switch to which his injury is attributed, and that he could not have known thereof by the exercise of ordinary care and diligence. The complaint is sufficient.

Did the court err in overruling appellant's motion for judgment on the answers to interrogatories? Said answers show that the decedent, on the occasion of the injury, was walking between the rails of the track upon which he was struck; that there was ample space on the north side and on the south side of the passing track where he could have walked in safety from any collision with moving cars; that at the time he turned the switch in question he carried in his hand a lighted lantern; that he had been employed as

switchman and brakeman in the yards and about the switches about the yards where he was injured for about three years before he was injured. The lever operating the switch in question had on the outer end a heavy iron ball. When the switch-lever was on the east side of the switch target the connection of the tracks was such as to admit cars passing westward from the passing track to and upon switch track No. 8. When the switch-lever was on the west side of the switch target the connection of the tracks admitted cars passing westward to pass the switch upon and over such passing track. The switch-stand was above the level of the ground, upon a sill, and of ready access to one using the same. The ground about the switch target and the tracks in question was level and free from obstruction. The switch lamp on the occasion contained four lenses, the two opposite lenses being green, and the two other opposite lenses being red. When the decedent went to the switch-stand in question, the lever which operates the switch was turned to the eastward. With the lever turned to the eastward all cars being backed up upon the track would have gone in upon switch track No. 8. The decedent turned the switch-lever to the westward, disconnecting switch track No. 8 and connecting tracks for the passage westward over the passing track. When he went to the switch-stand upon the occasion in question, the switch target stood in position indicating that the track had been adjusted to admit cars upon switch track No. 8. When he turned the switch-lever he thereby turned the switch lamp so that the green lenses thereof were shown to the eastward and westward.

Interrogatories sixteen, seventeen, eighteen, twenty-three, and twenty-five are as follows:

"(16) Did not the red lenses, when parallel with the track, indicate that the switch was so adjusted as to admit cars from the passing track to the switch track No. 8? (17) Did not the green lenses, when parallel with the

track, indicate that the switch was so adjusted that cars would move past the switch upon the passing track? (18) Upon the switch-stand at the time of the injury to the decedent Binder, was there not attached metallic wings or targets, each wing extending from side to side of the switch-stand in opposite directions, and being different in shape and color, so as to indicate, when parallel with the track, either that the switch was open or was closed?" "(23) At the time Binder turned the switch-lever to the westward, did not such turning also adjust the switch target so as to indicate that the tracks were adjusted for the passing of cars over the passing track?" "(25) When Binder went to the switch-stand to turn the switch, were not the red lenses thereof so adjusted as to show to the eastward and to the westward?" The answer to each of these is: "Yes, if light was burning."

The facts specially found show that the unfortunate decedent was entirely familiar with the yard, the switch, and the track in and about which he was employed. He carried a lighted lantern. He must have been familiar with the significance of the position of the switch-lever and the lenses and the targets connected with the switch. Casual observation must have disclosed to one so well acquainted with the situation as the decedent, before he changed the switch, that the connection had been properly made with the storage track. If the switch light was not burning (as to which there is a conflict in the testimony—one witness for the appellee testifying that it was not, and three for appellant that it was), the decedent carried his own lighted lantern and he would not be excused from the exercise of ordinary care because of the absence of the switch light. Even if it be assumed that it was negligence upon the part of the yardmaster to turn the switch and fail to inform the decedent of such fact, still the decedent would not be relieved of the duty of exercising ordinary care.

The section of the statute upon which the action is based makes the appellant liable when the injured party is in the exercise of due care and diligence. The person by whom the switch had been turned, whether by the yardmaster or one not connected with the appellant company, could make no difference in the duty of the decedent to exercise ordinary care. The facts found conclusively show that the decedent was in the performance of his duty under circumstances and conditions well known to him, and that if he had exercised ordinary care he must have discovered the condition of the switch, and thus have avoided the mistake which resulted in his death. We do not lose sight of the rule that interrogatories answered by the jury will only prevail over the general verdict when there exists an irreconcilable conflict between the two, that the general verdict must stand if it can be upheld under any supposable state of facts provable under the issues, and that the presumptions must be indulged in support of the general verdict and against the special answers. *Rhodius* v. *Johnson,* 24 Ind. App. 401. As said in *Lake Shore, etc., R. Co.* v. *Graham,* 162 Ind. 374, "such presumptions must be reasonable, and relate only to such facts as might have been proved under the issues as formed." Waiving the fact that decedent was walking upon the track in front of the approaching train when he might have walked in safety upon either side of said track, no facts provable under the issues could excuse him from the exercise of ordinary care in the adjustment of the switch. The general verdict implying such care is irreconcilably in conflict with the special findings.

As supporting the conclusion reached we cite: *Lake Shore, etc., R. Co.* v. *Graham, supra,* and cases cited; *Buckmaster* v. *Chicago, etc., R. Co.,* 108 Wis. 353, 84 N. W. 845; *Kelley* v. *Calumet Woolen Co.,* 177 Mass. 128, 58 N. E. 182; *Chicago, etc., R. Co.* v. *Cunningham, ante,* 145; *Pittsburgh, etc., R. Co.* v. *Seivers,* 162 Ind. 234; *Salem-Bedford Stone Co.* v. *O'Brien,* 12 Ind. App. 217; *New*

*York, etc., R. Co.* v. *Ostman,* 146 Ind. 452; *Brazil Block Coal Co.* v. *Hoodlet,* 129 Ind. 327; *Lake Shore, etc., R. Co.* v. *Pinchin,* 112 Ind. 592; *Day* v. *Cleveland, etc., R. Co.,* 137 Ind. 206; *Stewart* v. *Pennsylvania Co.,* 130 Ind. 242; *Louisville, etc., R. Co.* v. *Mounce* (Ky.), 71 S. W. 518.

It is not necessary to consider the other alleged errors.

Judgment reversed, with instructions to render judgment in favor of appellant on the answers to interrogatories.