FITZPATRICK, Administrator, Appellant, vs. LAKE SUPERIOR
TERMINAL AND TRANSFER RAILWAY COMPANY and an-
other, Respondents.

*February 2—February 22, 1910.*

*Appeal: Review: Taking questions from jury: Railroads: Negligence:
Death of employee: Contributory negligence: Special verdict:
Inconsistency.*

1. The conclusion of the trial court respecting sufficiency of evi-
dence as to any fact in issue to present a jury question should
not be disturbed unless it appears to be clearly wrong, giving
due weight to the superior advantages of that court for discov-
ering the truth.

2. In an action against a terminal railway company and also against
a fuel company for death of a switchman who was crushed be-
tween a switch engine, on the side steps of which he was rid-
ing, and a box-car loader operated by the fuel company upon a
parallel track, a nonsuit as to the railway company is *held* to
have been properly granted, the evidence as to the duties and
conduct of the fireman on the engine being insufficient to make
it a question for the jury whether he was negligent, as alleged,
in failing to keep a lookout ahead and to warn the deceased of
his danger.

3. A finding by the jury in such case that it was not customary for
the box-car loader to move upon its track opposite to or past
the switch engine or cars when the switch engine was moving
on its track, was not inconsistent with a finding that deceased
was guilty of contributory negligence, there being evidence
tending to show that the loader had been brought to a full stop
on its track before the engine passed it and that deceased,
though familiar with the manner in which the loader was han-
dled, rode in the position he did without looking to ascertain
where the loader was; and both such findings are *held* to be
sustained by the evidence.

APPEAL from a judgment of the circuit court for Douglas
county: A. J. VINJE, Circuit Judge. *Affirmed.*

The *Northwestern Fuel Company,* hereinafter called the
*Fuel Company,* operated a coal dock at Superior. The
*Lake Superior Terminal and Transfer Railway Company,*

hereinafter called the *Terminal Company*, operated two railway tracks upon said dock; the westerly track, that nearest the coal bins, being designated as track No. 2, and the other track No. 1.    The dock was about 1,000 feet long, extending north and south, and the tracks extended its entire length. The *Fuel Company* used a device known as a "box-car loader" to facilitate the work of loading coal in box cars. The device was set upon a flat car, which was operated upon a track eight feet between rails and was about ten feet in width.    It was propelled along its track by electric power and was driven by a motorman.    It was housed near the south end of the coal dock, and traveled back and forth on the dock as there was occasion to use it while box cars were being loaded on the dock.    It could not be operated along its track when there were cars on track No. 1, as the east rail of track No. 1 was used as the east rail of the loader.    There was a clearance of from five to eight inches between box cars standing on track No. 2 and the box-car loader, and a clearance of about three and three-fourths inches between such loader and the engine in use at the time of the accident, which engine was the one customarily used in switching upon the coal dock.    Track No. 2 curved to the west as it approached the house in which the box-car loader was stored when not in use, so that at this point there was a clearance of about fifteen feet between the loader and an engine.

Frank E. Fitzpatrick, the deceased, was foreman of the switching crew.    On the morning of the accident the engine switched some empty cars onto track No. 2 for the purpose of being loaded.    After the cars were spotted the engine was uncoupled and started to leave the dock, proceeding southward. · The deceased took a position on the first or second step leading into the cab of the engine and held himself in position by grasping the handrail, his body being outside of the tender.    The box-car loader, proceeding in a northerly direction, passed by the engine, and deceased was crushed to death between the two.

The plaintiff, as administrator, brings this action against the *Terminal Company* and also against the *Fuel Company*. The alleged negligence of the *Terminal Company* consisted in the failure of the fireman on the locomotive to keep a lookout ahead and to notify Fitzpatrick of his danger. At the close of the plaintiff's evidence a nonsuit was granted in favor of the *Terminal Company*. The jury returned a verdict on the case made against the *Fuel Company*, in which it found that such company was guilty of negligence in the operation of the box-car loader, by failing to keep a proper lookout and by not having a danger signal warning on such loader, and that such negligence was the proximate cause of the death of Fitzpatrick.

By its answer to the fourth question in the special verdict the jury found that the deceased was guilty of a want of ordinary care that contributed to produce his death. The sixth question in the special verdict was as follows:

"Was it the practice and customary way of doing the work for the car loader to move upon its track opposite to or past the engine or cars when the engine was putting in or taking out cars, or otherwise moving on track No. 2 ?"

To which question the jury answered "No." The plaintiff moved to change the answer of the jury to the fourth question in the special verdict, and also asked that the verdict be amended by finding that the *Fuel Company* was negligent in running the box-car loader down the track before the engine had passed out from the dock. These motions were denied, as well as a motion to set aside the verdict and grant a new trial, and judgment was entered upon the verdict in favor of the defendant *Fuel Company* dismissing the complaint. From the judgment entered as to each of the defendants, plaintiff brings this appeal.

For the appellant there was a brief by *Crownhart & Foley*, and oral argument by *C. H. Crownhart*.

For the respondent *Lake Superior Terminal and Transfer Railway Company* there was a brief by *J. A. Murphy;* for

the respondent *Northwestern Fuel Company* there was a brief by *Luse, Powell & Luse,* attorneys, and *A. E. Boyeson* and *P. J. McLaughlin,* of counsel; and the cause was argued orally by *L. K. Luse.*

BARNES, J.   That the question of the negligence of the *Terminal Company* should not have been submitted to the jury is not free from doubt.   The testimony tending to show such negligence was given by the locomotive fireman and pertained to his own duties and to his manner of performing them. The evidence when the nonsuit was granted was materially different on many important points from that thereafter offered by the *Fuel Company.*   From such evidence it appeared that, at the time the engine was uncoupled and started southward, the box-car loader was standing on its track near the house in which it was stored and at a place where the switch engine would clear it by some twelve or fourteen feet, and that it was not the practice or custom of those operating the loader to attempt to move it along its track while the engine was moving on track No. 2.   There was evidence which would warrant the jury in finding that the distance between the box-car loader and the engine, at the time the latter started to pull out, was anywhere from 145 to 375 feet.   The evidence is not entirely harmonious as to the rate of speed at which the engine and car loader were traveling before they passed each other, but it would indicate that the maximum speed of either did not exceed four miles per hour, and the evidence further indicates that the time which elapsed between the starting of the engine and the happening of the accident was from thirty to sixty seconds.   The appellant contends that the fireman was negligent in failing to keep a lookout and in failing to warn the deceased of his danger in time to avoid it.   The fireman testified that it was his duty to take signals when the engineer could not, to ring the bell, to tend fires, to keep up his engine, to fill the oil cans and to keep a lookout on the track for danger, and to warn

the engineer and other members of the crew of danger. In reference to this particular accident he testified that, before giving the engineer the signal from the switching crew to start up, he looked ahead and ascertained that the loader was standing on its track near its house in the clear and in the same position in which it was when the crew came in to do its work; that he then looked back to see if the switching crew, who were supposed to ride out on the footboard of the tender, were safe; and that it was not more than a minute after the engine started when the accident happened. He further said it was part of his duty to look back and see if the men got on the tender; that he was looking back when the accident happened; and that it occurred so suddenly that he did not have time to look back and then again to the front.

Were the fireman charged with the duty of looking at all times and under all circumstances in the direction in which the engine was going, it would be difficult to escape the conclusion that he was negligent in the present case. But he had other duties to perform which necessarily prevented him from looking ahead at all times, and it is a fair construction of his evidence to say that he was charged with the duty of keeping a lookout after the engine started when not necessarily employed otherwise. The engine had not gone the distance he could plainly observe from where it had been standing before the accident happened. He did look to ascertain that the track was clear before giving the signal to start. It was apparently his duty also to see that the switchmen were safely located on the footboard of the tender. The only ground on which the fireman could be held negligent was that he looked back longer than was necessary and this does not affirmatively appear. It may be that he might have performed this part of his duty with greater celerity than he did, but from the evidence as it stood when the nonsuit was granted he had no reason to anticipate that the car loader would change its position until after the engine pulled out, and he had ascertained that the track was clear before giving

the engineer the signal to go forward. It has been held by this court that "a conclusion of a trial court, respecting sufficiency of evidence as to any fact in issue to present a jury question, should not be disturbed unless it appears from the record to be clearly wrong, giving due weight to the superior advantages which such court had for discovering the truth." *Clemons v. C., St. P., M. & O. R. Co.* 137 Wis. 387, 391, 119 N. W. 102; *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573; *Bohn v. Racine,* 119 Wis. 341, 96 N. W. 813; *Lam Yee v. State,* 132 Wis. 527, 112 N. W. 425. In the face of this rule this court would not be warranted in reversing the ruling made by the trial court in granting the nonsuit. On the contrary, we think the ruling was correct.

The evidence was ample to warrant the jury in finding that the deceased was guilty of contributory negligence, and calls for no discussion. It is urged, however, that, if the deceased was negligent, his negligence consisted in his failure to look out for the loader, and that by the answer to the sixth question in the special verdict he was exculpated from blame in this regard, and that the plaintiff, therefore, was entitled to have the answer to the fourth question in the special verdict finding contributory negligence changed, and to have judgment in his favor on the verdict as so modified. Failing in this, it is urged that the answers to the fourth and sixth questions in the verdict are so inconsistent that it should have been set aside and a new trial granted.

In passing upon this aspect of the case the evidence most favorable to the defendant *Fuel Company* must be considered. From that evidence the jury might have concluded that it was the uniform practice of the switching crew to ride on the footboard in front or on the rear of the engine when it was about to leave the dock; that the deceased chose not only a dangerous but an unusual place to ride; that the box-car loader frequently moved past the engine while the same was standing on coal dock track No. 2; that the car loader started out every morning in winter at 8 o'clock for its day's work,

and moved past any engine or cars that were at a standstill on track No. 2; that the car loader pulled out at its usual time on the morning of the accident; that it started before the engine did, and that it was brought to a full stop before the engine passed by it; that the deceased had worked with the switching crew on this dock for a year and was thoroughly familiar with the manner in which the box-car loader was handled, and, knowing that it was likely to start out at the time it did, and without looking to ascertain where the loader was or whether it was in motion, he took a position that was certain to result in his death if the loader was moving in the direction of the engine. That he did not look is very evident, else he would have avoided the peril by stepping into the cab. We do not construe the sixth question and answer as finding that the loader did not customarily pass the switch engine and cars on track No. 2 when the same were not in motion. The jury did not find that the *Fuel Company* was negligent in moving the loader past the engine on track No. 2, but because it was not equipped with a danger signal and because the operator was not keeping a proper lookout. We fail to see where there is any inconsistency in the answers made by the jury to the fourth and sixth questions of the special verdict. There appears to have been sufficient evidence to sustain the answers made to both of the questions.

*By the Court.*—Judgment affirmed.