ZABAWA, by guardian *ad litem*, Appellant, vs. OBERBECK BROS. MANUFACTURING COMPANY, Respondent.

*May 3—October 3, 1911.*

*Master and servant: Injury to servant: Incompetence of fellow-servant: Mischievous act of boy: Scope of employment.*

1. While plaintiff, a boy fifteen years old, was engaged with another boy a year older in cleaning up sawdust and other refuse around the saws in a furniture factory, the other boy moved a suspended frame carrying a circular crosscut saw and blocked it over the saw table near which plaintiff was working. Then, by shifting the belt from the loose pulley to the tight pulley, he started the saw for the purpose of cutting a stick in two. The frame and saw, becoming released, swung back by force of gravity against the plaintiff and cut off his arm. Whether in starting the saw the other boy was acting within the scope of his employment is *held*, upon the evidence, to have been a question for the jury.

2. Upon evidence tending to show four instances of mischievous or sportive conduct on the part of a boy between sixteen and seventeen years old employed about the saws in a furniture factory, the opportunity of the employer for observation, and that plaintiff, a co-employee, was injured by a mischievous and negligent act of the boy in starting a circular saw, it is *held* that the jury might have found that the boy was incompetent because of his youth and mischievous propensities to be employed around dangerous machinery, and that the employer ought in the exercise of ordinary care to have known that fact. BARNES, MARSHALL, and VINJE, JJ., dissent.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

*Geo. L. Williams,* for the appellant, cited, among other cases, *Molaske v. Ohio C. Co.* 86 Wis. 220, 56 N. W. 475; *Kucera v. Merrill L. Co.* 91 Wis. 637, 65 N. W. 374; *Klatt v. N. C. Foster L. Co.* 97 Wis. 641, 73 N. W. 563; Shearm. & Redf. Neg. (5th ed.) § 73; *Swift v. Staten Island R. T. R. Co.* 123 N. Y. 645, 25 N. E. 378; *Wabash R. Co. v. Mc-Daniels,* 107 U. S. 454, 2 Sup. Ct. 932; *Cleveland R. M. Co. v. Corrigan* (46 Ohio St. 283) 20 N. E. 466, 3 L. R. A. 385.

For the respondent there was a brief by *Goggins & Brazeau,* and oral argument by *Theo. W. Brazeau.*

The following opinion was filed June 1, 1911:

TIMLIN, J. The plaintiff sought to recover damages caused by the negligent act of an incompetent fellow-servant. The court directed a verdict for defendant upon the ground that the act causing the injury was not within the scope of the employment of the fellow-servant. Plaintiff was fifteen and Albert, the fellow-servant, sixteen years of age, both working in defendant's factory. On the floor in this factory upon which they worked there was considerable machinery. Besides the saw on which plaintiff was injured there was a planer and another crosscut saw. There were also three rip-saws and the usual shafts, belting, and pulleys. From ninety

to one hundred men were engaged in working on this floor. Albert fed or operated one of the ripsaws, and it was the plaintiff's duty to take the sawed pieces from this machine and also to aid Albert or co-operate with Albert in cleaning up sawdust and shavings around these saws and other machines with a broom.

Among the machinery in this factory was a circular crosscut saw in the lower end of a frame suspended from the ceiling, driven by a belt extending downward parallel with this frame. The frame was so suspended that the frame and saw hung to the east side of the saw bench or table. The saw was operated by drawing it with its swinging frame by means of a handle to the west toward the operator and across the board or piece lying on the saw table which it was expected to crosscut. The man in charge of this crosscut saw stopped the saw and left. Plaintiff and Albert began to clean up around the saw. Albert pulled the suspended frame carrying the still saw to the west and braced or blocked it there with a piece of board sixteen or eighteen inches long. Plaintiff went to the east side of the saw bench or table to clean up on that side. While plaintiff was so engaged Albert shifted the belt from the loose pulley to the tight pulley and started the saw. He did this because he wanted to cut a stick in two. Why he wanted to cut the stick in two he could not tell. The jury would have a right to infer that it was a piece of boyish mischief. The frame with the revolving saw in some way escaped from the block or brace and in obedience to gravitation swung back east against the plaintiff and cut off his arm. Albert, testifying for the defendant, says the plaintiff knocked out the brace or block. Plaintiff says he did not. Albert had prior to this time cut canvas on the crosscut saw. He had thrown a stick into a revolving pulley. He had pushed some lumber in play from plaintiff's truck, and he had indulged in wrestling with plaintiff on this factory floor. The first two appeared to have been isolated items of play

or mischief and the last two apparently occurred more than once.

It is contended that the act of Albert in starting the saw was outside the scope of his employment. But that was a question for the jury. The employment in which plaintiff and Albert were engaged at the time of the injury consisted in cleaning up around this crosscut saw. It may have been necessary or convenient, when cleaning on the east side, to swing the saw with its pendulous frame to the west and block it there. If this was part of the operation of cleaning up, then the person who swung it over and blocked it should leave the belt on the loose pulley while the saw was in that position. Instead he negligently started the saw. This latter was not an act so remote or divergent from the work in which plaintiff and defendant were engaged as to justify the court in taking the question from the jury and saying that it appeared affirmatively and as matter of law beyond the scope of Albert's employment. *Daley v. C. & N. W. R. Co.* 145 Wis. 249, 129 N. W. 1062.

Although the court did not decide the case on that ground, it is next contended that the decision of the circuit court may be supported because there was no sufficient evidence of the incompetency of Albert, and further that there was no sufficient evidence to charge the defendant with notice or knowledge of such incompetency. The evidence is not very satisfactory. It is however proper to consider the nature of the place in which Albert was employed. A mischievous youth inclined to play in the vicinity of saws, belts, and shafting might be quite incompetent when the same youth would be competent in other work. There is evidence from which the jury might infer that Albert was a youth so disposed, and the very act which caused the plaintiff's injury was an act of this character. Four instances of mischievous or sportive conduct are presented as above indicated. The age of the boy Albert was known to his employer. Some little supervision

would no doubt have disclosed his disposition to play and his consequent inattention in proximity to this dangerous machinery, and it can hardly be said as a rule of law that an employer exercising ordinary care and having boys of this age engaged around dangerous machinery would make no effort to exercise some degree of watchful supervision so as to ascertain whether they were careless and mischievous as boys are inclined to be or whether they were careful and attentive to duty.

We think this case is within the principle of *Molaske v. Ohio C. Co.* 86 Wis. 220, 56 N. W. 475, and other cases cited by the appellant.   Albert's father, who worked on the same floor, was by the foreman given charge of Albert with directions to keep him busy.   There was another subordinate foreman on the floor, and the general foreman or superintendent had every opportunity to observe these boys, and ordinary care might require him to make an effort to prevent mischievous play on the floor while the factory was in operation, or to discharge any boy who evinced a disposition to indulge in play or marked inattention to his duties amid such dangerous surroundings.   Certainly it is a matter of common knowledge that most boys of sixteen are playful and thoughtless and many of them endowed with a monkey-like mischievousness which might be very dangerous to others in a factory like. that described.   From this evidence, consisting of the four instances mentioned, the age of the boy, the nature of his surroundings, the opportunity of the master for observation, supplemented by the nature of the act which caused the injury, the jury might have found that Albert was incompetent because of his youth and mischievous propensities to be employed around dangerous machinery, and that the employer ought in the exercise of ordinary care to have known this, and that the plaintiff was injured by the negligence of Albert.   It follows that the judgment ought to be reversed.

*By the Court.*—Judgment reversed, and the cause remanded for a new trial.

The following opinion was filed June 3, 1911:

BARNES, J. (*dissenting*). The facts relied on to make the question of the incompetence of Albert Erickson a jury question, aside from his age, are the following: (1) The plaintiff testified that Erickson sawed a piece of canvas once about a week before the accident. Erickson denied that he did so, and there is no proof that any one saw him do the act aside from the plaintiff. (2) On one occasion about two months before the accident he put a stick in a pulley, for what purpose does not appear. No one apparently saw this but the plaintiff. (3) During the three months that these boys worked together plaintiff sometimes pushed lumber off the truck which Erickson was handling, to make him do the extra work of picking it up, and Erickson pushed lumber off the truck which plaintiff was operating, to make him extra work. These acts were done three or four times, and there is no evidence that the acts were attended by any danger whatever or that any one else knew of them. (4) The plaintiff and Erickson scuffled a few times, generally when the whistle blew for the noon hour, or shortly before or after. There was no evidence to show that the scuffling was carried on in a dangerous place or was attended with any danger.

A boy between sixteen and seventeen years of age who would not lighten the burden of his labors by the amount of frivolity indulged in by Albert Erickson during a period of three months would be a freak rather than a normal boy. There may be some who have never been young except in years, who have little red blood coursing through their arteries, who carry a perpetual grouch and always look as wise as owls and as solemn as if they were about to have a tooth pulled, but the ordinary boy fortunately is optimistic, more or less mischievous, and his effervescing spirit irresistibly compels him to occasionally indulge in harmless pranks. We sometimes hear of boy cherubs, but mostly from fond mothers or

in juvenile books. They are as scarce in factories as snow-flakes are in Panama. There was nothing in the conduct of Erickson before the day on which the accident occurred to distinguish him from the great mass of other boys of the same age, and nothing to distinguish him from the plaintiff who is bringing this suit. There was no proof showing that the master knew of any of these occurrences, but assuming that it did, or in the exercise of ordinary care should have known of all of them, still they neither showed nor tended to show that the boy was more incompetent than the ordinary run of boys of the same age.

Sec. 1728a, Stats. (Laws of 1907, ch. 523) subd. 1, prohibits the employment of a minor between the ages of fourteen and sixteen years in any factory without first obtaining a permit in writing from one of certain officers therein specified. Subd. 2 of the statute prohibits the employment of a minor under the age of sixteen years to operate saws and other dangerous machinery. This is the latest legislative declaration relative to the employment of minors applicable to the facts of this case. By declaring to be unlawful the employment of minors under the age of sixteen years, the legislature has in effect declared their employment to be lawful when they have passed that age. If this is so, the employer is not guilty of a tort in hiring a minor. It is not negligence *per se* to employ him, and neither is it permissible for a jury to say that incompetence can be found from the mere fact of age. The accident occurred on August 28, 1907, and the Erickson boy became seventeen years of age on the 23d of November following.

But it is said here that the fact of employment at such an age may be considered in connection with the other facts shown, and that the jury may infer negligence from the combination of all the facts established. This is equivalent to saying that whenever one servant is injured because of the negligence of another, where that other is a minor, incompe-

tence may be established by showing the fact of minority and that the minor poked some of his fellow minors in the ribs and was himself poked in return, or knocked off their caps or scuffled with them, or stood on his head, or did any other unladylike act. It is practically tantamount to saying that negligence may be inferred from the mere fact of hiring, because wherever boys are congregated, whether in factories or in other places, during their idle moments they will do just these things, and there is nothing to show that any act performed by Erickson before the day on which the injury occurred was dangerous to any employee about the factory. There was nothing shown which differentiated Erickson's conduct from that of the plaintiff and nothing to show that he was not an ordinarily careful boy. I do not think that employers are culpable in employing boys that are past sixteen years of age, provided they are not employed in unreasonably dangerous or unsanitary places and they are not overworked. Generally speaking, boys are better off doing something during their vacations than they are in roaming the streets. But if this idea is archaic, still the legislature is the proper body to remedy the abuse. It is not logical to permit the employment and then hold the employer to be guilty of wrongdoing because he acted in accordance with the plainly implied permission given him. If Erickson had been discharged for the acts complained of before the injury to the plaintiff occurred, and he happened to have a widowed mother dependent in a measure upon him for support, the officer discharging the boy would be looked upon as a cruel, cold-blooded martinet, wholly devoid of any of the milk of human kindness.

Neither do I think that the decision of the trial court, holding that Erickson was acting entirely outside of the line of his employment when he started the saw, should be set aside. The saw was not in use when the boys started to clean up. The belt was off the pulley which ran the saw at the time. There is not a suggestion of any kind in the record that there was any call to put on the belt and start the saw. This court

has said in a number of cases that the decision of the trial court in directing a verdict will not be set aside unless it is clearly wrong. *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573; *Bohn v. Racine,* 119 Wis. 341, 96 N. W. 813; *Lam Yee v. State,* 132 Wis. 527, 112 N. W. 425; *Clemons v. C., St. P., M. & O. R. Co.* 137 Wis. 387, 391, 119 N. W. 102; *Fitzpatrick v. Lake Superior T. & T. R. Co.* 142 Wis. 65, 70, 124 N. W. 1054.

I am authorized to say that Mr. Justice VINJE concurs in this opinion.

MARSHALL, J. I concur in the foregoing dissenting opinion of Mr. Justice BARNES.

A motion for a rehearing was denied October 3, 1911.