SZELIWICKI, Respondent, vs. CONNOR LUMBER & LAND COMPANY, Appellant.

*October 9, 1913—March 17, 1914.*

*Master and servant: Fellow-servants: Incompetency: Evidence: Judicial notice: Habitual negligence: Unsafe working place: Appeal: Questions not tried below: Remanding for new trial.*

1. Employees of the same master, each handling boards, one throwing from the pile and the other picking up the boards and

loading them upon a wagon, were fellow-servants, although under the immediate direction of different subordinate foremen.

2. A servant may be incompetent because of physical or mental incapacity to perform the particular work to which he is assigned, with safety to himself and others. Incompetency may arise from mere youth, from inexperience, lack of practice, or habitual negligence.

3. The court will not take judicial notice that pushing or dropping boards from a lumber pile so as to strike the boards which men below are carrying away is an act necessarily dangerous to others or culpably negligent; and proof of several such occurrences in the course of a day's work is insufficient of itself to support a verdict that the employee was habitually negligent and therefore incompetent to do the simple work of taking down a lumber pile.

4. Proof that such acts were followed by a warning from the foreman to be careful and not to hurt anybody, with no evidence that the conduct was persisted in thereafter and no particular description of the acts done, while it has a probative quality as respects notice to the employer, falls short of establishing incompetency of the employee on the ground of habitual negligence.

5. The injury in this case having occurred after ch. 485, Laws of 1911, went into effect, and the question whether the defendant had, as required by said act (secs. 2394—41, 2394—48, Stats. 1911), furnished a working place which was as safe as the nature of the work would reasonably permit not having been considered on the trial or passed upon by the jury, the case is remanded for a new trial according to the law applicable thereto.

APPEAL from a judgment of the circuit court for Forest county: W. B. QUINLAN, Circuit Judge. *Reversed.*

*Allan V. Classon,* for the appellant.

For the respondent there was a brief by *Kaftan & Reynolds,* and oral argument by *R. A. Kaftan.* Upon the question of incompetency, they cited *Maitland v. Gilbert P. Co.* 98 Wis. 495, 72 N. W. 1124; *Kliefoth v. Northwestern I. Co.* 98 Wis. 495, 74 N. W. 356; *Kamp v. Coxe Bros. & Co.* 122 Wis. 206, 99 N. W. 366; *Johnson v. St. Paul & W. C. Co.* 126 Wis. 492, 105 N. W. 1048; *Hamann v. Milwaukee B. Co.* 127 Wis. 550, 106 N. W. 1081; *Odegard v. North*

*Wis. L. Co.* 130 Wis. 659, 110 N. W. 809; *Young v. Milwaukee G. L. Co.* 133 Wis. 9, 113 N. W. 59; *Zabawa v. Oberbeck Bros. Mfg. Co.* 146 Wis. 621, 131 N. W. 826; *Ludvigson v. Superior S. B. Co.* 147 Wis. 34, 132 N. W. 621; *Freeman v. Dells P. & P. Co.* 150 Wis. 93, 135 N. W. 540.

The following opinion was filed December 9, 1913:

Timlin, J. In this action for negligent injury sustained August 5, 1911, the jury returned a special verdict which en-. titled the plaintiff to judgment for $5,000. Recovery was based on the negligence of a fellow-servant of the plaintiff named Winkop. We do not find any other question in the case requiring discussion. The fifth question of the special verdict was as follows: "Was Winkop an incompetent employee for throwing down cross pieces from the pile on August 5, 1911?" The jury answered this question in the affirmative and the circuit judge refused to set aside the answer. It was assumed on the trial, and we think correctly, that Winkop and the plaintiff were fellow-servants. They were in the service of the same master, at work in the same lumber yard, each handling boards, one throwing from the pile and the other picking up the boards, and if Winkop was under immediate direction of one subordinate foreman and the plaintiff under the immediate direction of another subordinate foreman, this alone could not change their status as fellow-servants.

The work in which Winkop was engaged was of a very simple and ordinary kind. He was passing lumber from the top of a lumber pile down to other workmen who loaded it on a wagon. The pile was about twenty-five feet high, and when he took off a layer of boards he encountered several cross pieces which lay under that layer and over the next lower layer. These he was required to throw down upon another side of the pile and into an alley or driveway about twenty-three

feet in width. The testimony relating to his incompetency was as follows: Collins, a fellow laborer, testified:

"I had worked with him before that day, I should judge a month or so every day, doing different work around the yard. He was handing down boards most of the time. I saw no trouble to amount to anything about the way he did his work. The foreman told him to be careful the same as he did the rest of us. I saw him drop boards that hit other boards that men were picking up. I do not know whether it was in a careless way or not. The men picking up the boards did not like it. I saw him do that three or four or five times. I heard the foreman giving him hell for spitting on the lumber with tobacco juice. He was jawing at the Polish people. When a man would pick up a board, have it in his hand, he would drop a board and hit that one."

After being cross-examined with reference to former testimony of his in which he appears to have gone somewhat farther in the direction of incompetency of Winkop, he testified:

"*Q.* About how many times did you see this man drop boards on the boards that the men were picking up, carelessly? *A.* I don't know as I could say he dropped them real carelessly at all. It was not a great many times, I could not say how many, that I heard the men object to the way he was dropping the boards down. It might have been five or six or may be more. Kelner [the foreman] told him to be careful after there was trouble about him dropping the boards down and before. I do not think he told them anything else. He said not to hurt anybody."

Another witness, Klinkewicz, a workman, testified that Winkop had the reputation of being careless; that he heard that from a chore boy named Krueger and some fellow named Joe Homanie. Krueger worked in the yard on a wagon in the daytime and in the evening he was chore boy. Neither Krueger nor Homanie was called.

As we understand this testimony, it relates to occasions when Winkop was passing lumber down from the top of the

pile to those carrying it off below, and that he sometimes hit the boards they were carrying off with the boards he was letting down. The plaintiff was injured by one of the cross pieces thrown in the alley by Winkop in the regular discharge of his duty and not by any of the lumber passed down from the pile.

A servant may be incompetent because of physical or mental incapacity to perform the particular work to which he is assigned with safety to himself and others. The term "incompetent" when applied to an employee always has reference to the kind of work in which he is engaged. Mere youth may render one incompetent for some purposes, as for example a boy twelve or fifteen years of age is presumably incompetent to fill a position requiring him to give signals to the operator of a hoist when the lives or safety of others depend upon such signals being properly given. *Molaske v. Ohio C. Co.* 86 Wis. 220, 56 N. W. 475. A boy fifteen years old and inclined to be mischievous may be found incompetent to work in a sawmill cleaning up around revolving saws. *Zabawa v. Oberbeck Bros. Mfg. Co.* 146 Wis. 621, 131 N. W. 826. A boy sixteen and one-half years of age who sometimes failed to stop and start properly may be found incompetent to have charge of operating a passenger elevator. *Vogel v. Herzfeld-Phillipson Co.* 148 Wis. 573, 134 N. W. 141. An adult who, by reason of lack of experience or because long out of practice, does not stop and start a saw carriage properly or safely, may be found incompetent as a circular saw operator where the proper handling of the carriage is necessary to the safety of the lives or limbs of others. *Curran v. A. H. Stange Co.* 98 Wis. 598, 74 N. W. 377. An adult iron molder authorized to use gasoline for drying out molds, whereby the gasoline might become ignited and dangerous, may be found incompetent upon testimony of habitual negligence in the use of such fluid for this purpose. *Moering v. Falk Co.* 141 Wis. 294, 124 N. W. 402. See note to this case in 18 Am. & Eng.

Ann. Cas. 926. On the other hand one may be inexperienced and yet competent for some duties. *Chicago, St. L. & P. R. Co. v. Champion,* 9 Ind. App. 510, 53 Am. St. Rep. 357. So a servant may be negligent and at the same time competent. *Olsen v. North Pac. L. Co.* 100 Fed. 384, 40 C. C. A. 427. Incompetence is defined in *Maitland v. Gilbert P. Co.* 97 Wis. 476, 72 N. W. 1124, and *Kliefoth v. Northwestern I. Co.* 98 Wis. 495, 74 N. W. 356.

One difficulty with the evidence of incompetence in this case is that there is no evidence of physical or mental incapacity, and none of the acts relied upon to establish it were shown to have been negligent acts within the proper meaning of the term "negligence." *Brossard v. Morgan Co.* 150 Wis. 1, 136 N. W. 181. That is the distinction between the evidence here and that in *Moering v. Falk Co.* 141 Wis. 294, 124 N. W. 402. In the latter case the act was obviously dangerous to others. If we could take judicial notice that pushing or dropping boards off a lumber pile so as to strike the boards that the men below were carrying away was an act dangerous to others and one from which an ordinarily prudent person in the exercise of ordinary care ought to have anticipated some injury or damage to another, then we might take up the question of the sufficiency of the evidence to support a verdict of incompetency upon the basis that several acts of negligence had been shown in the doing of work similar to but not identical with that in which the plaintiff was injured. Manifestly we can take no such judicial notice. We have no particular or detailed description of how the work was done at the time. The series of acts on the part of Winkop may as well have been awkward acts or mistakes or ordinary occurrences in that kind of work, but the evidence falls short of showing that either of them was a negligent act or a dangerous act. As is said in appellant's brief: "There is no evidence that the most careful employee does not occasionally drop a piece of lumber in the manner it was testi-

fied that Winkop did." So it may indicate fault to expectorate tobacco juice on lumber, but this fault does not equal the gravity of negligence.

Summing up these errors and omissions on the part of Winkop, they are insufficient, singly or together, to support a verdict that he was an habitually negligent and therefore an incompetent employee for the purpose of carrying on the simple and rudimentary work of taking down a lumber pile. Here we have a simple occupation, a limited number of irregular acts, no act shown to be unusual or easily avoidable or ordinarily dangerous to others, or shown to specifically indicate recklessness or a mischievous disposition. True, the foreman had told Winkop to be careful after he had dropped the boards in the manner stated and also warned him not to hurt anybody. There is no evidence that Winkop persisted in his awkwardness or errors or carelessness after this warning. The warning itself, unsupported by any particular description of the acts done, while it has a probative quality on the question of notice to the employer, falls short of supporting a charge of incompetency on the ground of habitual negligence. It does not relate to the act that Winkop was engaged in doing at the time the plaintiff was injured although somewhat closely connected with it. This lack of evidence on the subject of incompetency is not supplied by the testimony of the witness Klinkewicz. That testimony is very weak and bore more particularly on notice to the employer. *Moering v. Falk Co.* (141 Wis. 294, 124 N. W. 402) 18 Am. & Eng. Ann. Cas. 926, and cases in notes. The injury in question having been inflicted by the negligent act of a fellow-servant whose incompetency was not shown, the judgment must be reversed, and the cause remanded with directions to enter judgment dismissing the complaint.

*By the Court.*—It is so ordered.

BARNES, J., took no part.

The respondent moved for a rehearing.

In support of the motion there was a brief by *Kaftan & Reynolds,* attorneys, and *P. H. Martin,* of counsel, and in opposition thereto a brief by *Allan V. Classon,* attorney, and a separate brief by *Goggins & Brazeau,* of counsel.

The following opinion was filed March 17, 1914:

PER CURIAM. The respondent's attorneys move for a rehearing in this case, presenting for the first time to our notice that the injury occurred after the enactment of ch. 485, Laws of 1911. The statute went into effect June 30, 1911, and the plaintiff was injured August 5, 1911. The statute abolishing the defense of assumption of risk and the so-called fellow-servant defense did not go into effect until September 1, 1911. Ch. 50, Laws of 1911. The decision as written rests solely on what is conceived to be the common law regulating the relations of master and servant. It was considered that there was shown no case of concealed or latent danger and the work was being done by the employer in the ordinary and authorized manner, and upon the argument in this court the case turned on the question of the incompetence of the fellow-servant whose negligent act caused the injury. With the change made by ch. 485, *supra,* a different case might be made out even if the negligence of a fellow-servant contributed to cause the injury. That case, however, has not been tried. No jury has yet passed upon the question whether the place was as safe as the nature of the work would reasonably permit or upon any of the other questions which might arise under ch. 485, *supra.* It is therefore considered that the reversal already ordered may stand, but that the cause should be remanded for a new trial according to the law applicable thereunto.

*By the Court.*—It is so ordered.

The motion for rehearing was denied without costs.